UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**ALBERTO T. FERNANDEZ,
HENNY CRISTOBOL, and PATRICIA
RAMIREZ,**
    **Plaintiffs,**

  v.              Case No. 15-21915-CIV-GAYLES

**THE SCHOOL BOARD OF MIAMI-
DADE COUNTY, FLORIDA,**
    **Defendant.**
_____/

## ORDER

Plaintiffs Alberto T. Fernandez, Henny Cristobol, and Patricia Ramirez (collectively, the "Plaintiffs"), all current employees of the Miami-Dade County School District (the "District") bring this action against the Defendant School Board of Miami-Dade County, Florida (the "School Board"). In their Amended Complaint, the Plaintiffs bring a single claim alleging that the School Board, through an unofficial custom or practice, took adverse employment action against them, in violation of the First Amendment to the U.S. Constitution, in retaliation for the Plaintiffs' attempt to convert Neva King Cooper Educational Center ("Neva King")—a school at which all the Plaintiffs were formerly employed—from a public school to a charter school. For the reasons that follow, the School Board's motion to dismiss is hereby GRANTED.

**I. BACKGROUND**

The basis of this suit stems from the Plaintiffs' attempt to convert Neva King into a charter school, which ultimately failed, and the resulting fallout from that attempt. In 2011, Plaintiff Cristobol, the then-vice principal of Neva King, introduced the idea of charter school conversion to its then-principal, Plaintiff Fernandez. Am. Compl. ¶¶ 8-9. Fernandez wanted to

1

conduct additional research before presenting the idea to the school's Educational Excellence School Advisory Committee ("EESAC"). He enlisted three Neva King employees to assist him in this research, one of whom was Plaintiff Ramirez, who was a Placement Specialist at Neva King at the time. *Id.* ¶¶ 7, 9. Fernandez ultimately recommended that the EESAC vote in favor of exploring charter status, which they voted unanimously to do. *Id.* ¶ 10.

When Fernandez called his supervisor (unnamed in the Complaint) to inform him of the prospective conversion, his supervisor warned him that "repercussions would follow." *Id.* ¶ 14. The following day, several "high level District administrators" visited Neva King and, according to the Complaint, impliedly threatened the Plaintiffs' employment. *Id.* ¶ 15. A District administrator was dispatched to Neva King daily to "monitor activities at the school." *Id.* "The District" then instructed Fernandez to call a staff meeting to discuss the conversion recommendation. The meeting was attended by approximately 15 "high-level District administrators, including members of the Superintendent's Cabinet." According to the Complaint, one-sided and misleading information regarding charter schools in Miami-Dade County was given. *Id.* ¶¶ 16-17. Ultimately, "the District" decided to terminate the conversion ballot procedure. *Id.* ¶¶ 20-21.

After the conversion attempt failed, the District informed Fernandez and Cristobol that they would be subject to an investigation by the District's Civilian Investigative Unit for allegedly attempting to influence the outcome of the conversion vote, using District time and resources to facilitate the conversion, and arranging for an unauthorized individual to address school faculty and staff regarding the conversion. *Id.* ¶ 22. Fernandez and Cristobol were later informed that they were "prohibited" from contacting complainants or witnesses during the course of the investigation. *Id.* ¶ 23. Ramirez was later told that she was under investigation, as well, for her involvement in the conversion exploration, and it was alleged that she used school time and resources to conduct "non-school related business." *Id.* ¶ 24. During the pendency of

2

the investigation, each of the Plaintiffs was reassigned from Neva King to other locations where they were given mere menial tasks to perform. *Id.* ¶¶ 25-28.

In July 2012, the Plaintiffs filed complaints with the Florida Department of Education, alleging unlawful reprisal pursuant to Fla. Stat. § 1022.33(4). *Id.* ¶ 29. Ultimately, the Department of Education notified the District Superintendent that reasonable grounds existed to believe that the District had engaged in unlawful reprisal against Fernandez and Cristobol. *Id.* ¶¶ 34, 38. The District disposed of the disciplinary action against Ramirez in January 2013 by re-issuing directives it had previously issued in August 2012: "conform to all school board policies, cease and desist from using District resources inappropriately, and adhere to the terms and conditions of the administrative placement." *Id.* ¶ 40.

The Plaintiffs' complaints were forwarded to the Department of Administrative Hearings for a final administrative hearing, which took place in January and February 2014. At the conclusion, the administrative law judge entered a recommended order finding that the District committed an unlawful reprisal against each Plaintiff in violation of Fla. Stat. § 1022.33(4). *Id.* ¶ 45. The Florida Department of Education adopted the recommended order entirely, finding that the "Miami-Dade County School Board violated section 10[2]2.33(4)(a)" with respect to each Plaintiff. *Id.* Fernandez was awarded out-of-pocket expenses and lost bonuses totaling over $10,000, but neither Cristobol nor Ramirez were awarded monetary relief. *Id.*

The Plaintiffs filed a Complaint in this court on May 20, 2015, and amended that complaint on July 9, 2015. They bring a single count against the School Board alleging a violation of their First Amendment rights under 42 U.S.C. § 1983, claiming that their freedoms of speech and association were infringed and that they were subject to adverse employment actions.

The School Board filed the instant Motion to Dismiss on July 22, 2015. In the Motion, the School Board advances several arguments: (1) this action is barred by res judicata because it

3

involves the same claim or cause of action as the administrative procedure; (2) this action is barred under collateral estoppel for similar reasons; (3) the Plaintiffs have failed to state a claim for 42 U.S.C. § 1983 liability against the School Board under the strictures of *Monell v. Department of Social Services*, 436 U.S. 658 (1978); and (4) the Complaint fails to state a First Amendment violation, because all speech the Plaintiffs engaged in during the attempted conversion of Neva King to a charter school was engaged in pursuant to their official duties as Neva King employees and is thus not subject to First Amendment protection.

In opposition, the Plaintiffs argue the following: (1) the action is not barred by res judicata or collateral estoppel because the administrative action dealt only with retaliation over the charter school conversion and this one involves the allegation that the School Board violated their freedom of speech; (2) the Complaint states a *Monell* claim because the Plaintiffs can demonstrate a custom or practice within the school district that is so well-settled it assumes the force of law; and (3) the speech was subject to First Amendment protection because, even though it contained information acquired by virtue of public employment, it was still citizen speech.

## II.   LEGAL STANDARD

To survive a motion to dismiss, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 556-57 (internal quotation marks omitted)).

"Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678 (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions")), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, — U.S. —, 132 S. Ct. 1702 (2012); *see also Iqbal*, 556 U.S. at 681 (stating that conclusory allegations are "not entitled to be assumed true"). The Eleventh Circuit has promulgated a "two-pronged approach" in applying these principles: first, "eliminate any allegations in the complaint that are merely legal conclusions"; and second, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer,* 562 U.S. 521, 530 (2011).

### III. DISCUSSION

Because the Court finds that the municipal liability issue is dispositive of the School Board's motion, it will address only this issue.

A school board's liability under Section 1983 may not be based on the doctrine of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A county is "liable under section 1983 only for acts for which [the school board] is actually responsible." *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc). A school board is liable only when the school board's "official policy" causes a constitutional violation. *Monell*, 436 U.S. at 694. Thus, to state a Section 1983 claim against a school board, a plaintiff must "identify a municipal 'policy' or 'custom' that caused [his] injury." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citations and internal quotations omitted).

The Plaintiffs here, therefore, have two methods by which to establish the school board's policy: "identify either (1) an officially promulgated [school board] policy or (2) an unofficial custom or practice of the [school board] shown through the repeated acts of a final policy maker for the [school board]." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003). Because a school board rarely will have an officially adopted policy of permitting a particular constitutional violation, most plaintiffs—the Plaintiffs here included—must show that the School Board has a custom or practice of permitting the constitutional violation and that the School Board's custom or practice is "the moving force [behind] the constitutional violation." *Id.* at 1330 (citations and internal quotation marks omitted). The Plaintiffs acknowledge in their opposition that they must proceed via the custom route, as there is no officially adopted School Board policy mandating that employees seeking a charter school conversion be subject to reprisal. *See* Pls.' Opp'n at 6.

"To prove Section 1983 liability based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)) (citation and internal quotation marks omitted). And "[b]ecause Florida law identifies the School Board as the policymaker for the School District, a single decision by the Board may constitute School Board policy, even if not phrased as a formal policy statement." *Brown v. Miami-Dade Cnty. Sch. Dist.*, No. 15-22077, 2015 WL 7450753, at *3 (S.D. Fla. Nov. 24, 2015); *see also Cuesta v. Sch. Bd.*, 285 F.3d 962, 968 (11th Cir. 2002) ("Even in the absence of an express policy or custom, a local government body can be held liable 'for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision.'" (quoting *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996)).

Under a ratification theory, the School Board, "by actively endorsing or approving the conduct of its employees or officials, may be held responsible for it." *Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1189 (11th Cir. 2004) (citation and internal quotation marks omitted). For the Plaintiffs to state a successful Section 1983 claim against the School Board based on this theory, however, "they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis." *Id.* (citation and internal quotation marks omitted).

In their Amended Complaint, the Plaintiffs' allegations in support of their custom theory are summarized in a single paragraph as follows:

> <u>Unofficial Custom or Practice.</u> The constitutional violations resulted from an unofficial custom or practice of the School Board of Miami-Dade County to prevent the establishment of a conversion charter school as evidenced by the repeated acts and statements of final school board policy makers, including members of the Superintendent's cabinet, to delay, hinder, and prevent Plaintiffs from discussing, considering, and exploring the possibility of a conversion charter school.

Am. Compl. ¶ 49. This conclusory assertion is precisely the type of allegation that this Court has been directed to disregard under *Twombly* and *Iqbal*. Although the Amended Complaint's factual allegations are themselves detailed, there is nothing contained within them to show that the actions taken upon the Plaintiffs in alleged retaliation for attempting to convert Neva King into a charter school were not merely the idiosyncratic actions of individual public actors. The Amended Complaint alleges specific actions taken by the Superintendent's cabinet, other District officials and employees, or "the District" (in general terms), but it alleges no facts involving actions taken by the actual *School Board* itself, the only entity with final policymaking authority for the purposes of stating a claim for relief under *Monell*. *See Andrade v. Miami Dade County*, No. 09-23220, 2011 WL 4345665, at *8 ("The mere mention of policy, practice or custom is not enough, for a plaintiff must do something more than simply allege that such an official policy [or custom] exists.").

7

The Plaintiffs have not alleged that the School Board reviewed and ratified the decisions of any of the District officials regarding actions taken against the Plaintiffs *or* that the Board agreed with the decisions and the bases for those decisions. *See Garvie*, 366 F.3d at 1189. Further, the statements in the Amended Complaint do not amount to a plausible allegation of a course of action—again, taken by the School Board itself—that is "so permanent and well settled as to constitute a custom or usage with the force of law." *Brown*, 923 F.2d at 1481. The Plaintiffs' allegations read as an attempt to hold the School Board liable for the actions of District employees and officials in unlawfully retaliating against them for attempting to convert a public school into a charter school. But this type of respondeat superior liability is specifically proscribed under *Monell*, and the Court will not entertain such claims here. The Supreme Court has mandated that "rigorous standards of culpability and causation" must be satisfied to impose municipal liability. *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). The Plaintiffs' allegations fail to meet those rigorous standards.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1)   the Defendant School Board's Motion [ECF No. 14] is **GRANTED**; the Plaintiffs' Amended Complaint [ECF No. 10] is **DISMISSED WITHOUT PREJUDICE**;

(2)   all other motions, if any, are **DENIED AS MOOT**; and

(3)   the Clerk is directed to mark this case as **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of December, 2015.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

8