UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-21915-GAYLES

ALBERTO T. FERNANDEZ, HENNY
CRISTOBOL, and PATRICIA RAMIREZ,
        Plaintiffs,

    v.

THE SCHOOL BOARD OF MIAMI-DADE
COUNTY, FLORIDA,
        Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court on the Motion for Summary Judgment filed by the Defendant, the School Board of Miami-Dade County (the "School Board") [ECF No. 54]. The Court has carefully considered the parties' briefs, the record in this case, and the applicable law and is otherwise fully advised in the premises. For the reasons that follow, the School Board's motion shall be granted as to Plaintiffs Alberto T. Fernandez and Henny Cristobol and denied as to Plaintiff Patricia Ramirez.

**I.    BACKGROUND**

In this First Amendment action, the Plaintiffs (all current or former employees of Miami-Dade County Public Schools (the "School District" or the "District")) allege that the School Board unlawfully took adverse employment action against them in retaliation for their attempt (which ultimately failed) to convert Neva King Cooper Educational Center ("Neva King")—a Miami-Dade County public school at which the Plaintiffs all formerly held positions—into a charter school. In the fall of 2011, Dr. Fernandez, who was then principal at Neva King, directed members of his staff, including Cristobol (who was then assistant principal) and Ramirez (who was then a Placement Specialist), to research how they could convert Neva King from a public school into a

charter school. The three devoted countless hours to conducting research, drafting proposed budgets, communicating via the School District's email system, and contacting third parties to discuss the topic. On February 2, 2012, at a meeting of Neva King's Educational Excellence School Advisory Council ("EESAC"), Dr. Fernandez recommended that the EESAC consider conducting a vote to submit an application for charter conversion. The EESAC voted in favor of the proposal to explore a possible charter school conversion and voted to hold a charter school vote. Dr. Fernandez held a faculty meeting that day, as well, where he discussed the idea of conversion with the staff. The Plaintiffs scheduled a date to take a vote of the school's parents and teachers.

Dr. Fernandez subsequently informed his superiors of the events and the intention to conduct a charter school vote. From that point, the School District dispatched personnel to be stationed at Neva King. District officials were present at all meetings to discuss the charter conversion, and these officials would not permit Dr. Fernandez to address the parents.

The conversion attempt was terminated two months later. Dr. Fernandez and Cristobol were notified in writing that they was being investigated for allegations that they, *inter alia*, had used their positions as principal and assistant principal at Neva King to influence the outcome of the proposed charter school conversion and that they had inappropriately used school time and resources in furtherance of the conversion. Fernandez Aff. [ECF No. 59-3] Ex. G; Cristobol Aff. [ECF No. 59-2] Ex. C. Ramirez was notified that she was being investigated for allegations that she inappropriately used school time and resources to conduct non–school-related business. Ramirez Aff. [ECF No. 59-1] Ex. C. Each of the Plaintiffs was placed on alternative assignment during the pendency of the investigations and was informed that he or she was forbidden to "contact, visit, or engage in any type of communication with staff, parents, or community members from" Neva King or to "contact or engage in any type of communications with the subject of, or witness(es)" to the pending investigations. Fernandez Aff. Ex. H; Cristobol Aff. Ex. D; Ramirez Aff. Ex. D.

2

The investigations revealed that Dr. Fernandez and Cristobol had met with faculty and staff during school hours to discuss the proposed charter school conversion; Dr. Fernandez admitted that he worked on the attempt during school hours. The investigation also revealed that Ramirez had also used work time and resources in researching the charter school conversion. And on June 22 and July 13, 2012, the final investigative reports of the CIU investigation into the allegations against the Plaintiffs were released, which concluded that there was probable cause that the Plaintiffs had violated School Board policies dealing with standards of ethical conduct, code of ethics, staff network and internet acceptable use and safety, and staff electronic mail. As a result of these findings, conferences for the record were held with Dr. Fernandez, Cristobol, and Ramirez on July 19, July 20, and August 2, 2012, respectively. The probable cause findings were reviewed with the respective Plaintiffs, and they were informed that they could be subject to disciplinary action.

During the course of the investigations, the Plaintiffs initiated an unlawful reprisal proceeding against the School Board, contending that the reassignments and gag orders during the investigation violated Florida law. The Department of Administrative Hearings held a final administrative hearing in early 2014. At the conclusion of the hearing, the administrative law judge issued a recommended order finding that the School Board had committed an unlawful reprisal against the Plaintiffs in violation of Fla. Stat. § 1002.33(4). The Florida Department of Education adopted the ALJ's recommended order in a final order dated November 6, 2014.

In their Second Amended Complaint, filed on January 25, 2016, the Plaintiffs bring a single claim under 42 U.S.C. § 1983, alleging that the School Board infringed on their freedoms of speech and association and subjected them to adverse employment actions, in violation of the First Amendment to the United States Constitution. The Court denied the School Board's motion to dismiss, and now, following discovery, the School Board has moved for summary judgment on the Plaintiffs' claim. The Plaintiffs oppose the motion.

## II. LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. —, —, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citations and internal quotation marks omitted). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## III. DISCUSSION

### A. *First Amendment*

The thrust of the School Board's summary judgment argument is that the Plaintiffs' speech is not entitled to First Amendment protection because they did not speak as citizens on a matter of public concern when they attempted the charter school conversion. The Court, in its previous decision denying the School Board's motion to dismiss, laid out the pertinent legal framework on this issue:

> "Speech by citizens on matters of public concern lies at the heart of the First Amendment." *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014). "Government regulation of employees' speech differs from its regulation of the speech of its citizenry," however, because the government, "[a]cting as an employer, . . . is afforded broad discretion in its employment decisions." *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007) (per curiam). But "[a] government employer may not demote or discharge a public employee in retaliation for speech protected by the First Amendment," as a public employee "does not 'relinquish the First Amendment rights he would otherwise enjoy as [a citizen] to comment on matters of public interest.'" *Alves v. Bd. of Regents of Univ. Sys.*, 804 F.3d 1149, 1159 (11th Cir. 2015) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)), *cert. denied*, 136 S. Ct. 1838 (2016); *see also Lane*, 134 S. Ct. at 2377 ("[P]ublic employees do not renounce their citizenship when they accept employment, and [the Supreme Court] has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights.").
>
> As they are public employees, the Plaintiffs' First Amendment claims are subject to a four-stage analysis. *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617 (11th Cir. 2015). First, the Court must consider whether their speech was made as a citizen and whether it implicated a matter of public concern. *Id.* If this requirement is satisfied, the Court must weigh the Plaintiffs' First Amendment interests against the School Board's interest in regulating their speech to promote "the efficiency of the public services it performs through its employees." *Id.* at 618 (quoting *Carter v. City of Melbourne*, 731 F.3d 1161, 1168 (11th Cir. 2013)). These two questions are questions of law for the Court to decide. *Id.* If the Court finds that the speech is protected, the analysis proceeds to stage three, which requires the Plaintiffs to show that their speech was a substantial motivating factor in the School Board's adverse employment action. *Id.* And if the Plaintiffs make this showing, the burden shifts to the School Board to prove that it would have reached the same decision even in the absence of the protected speech. *Id.* Because these final two questions, which address the causal link between the Plaintiffs' speech and the alleged adverse employment actions, are questions of fact, a jury must resolve them unless the evidence is undisputed. *Id.*

5

*Fernandez v. Sch. Bd.*, 201 F. Supp. 3d 1353. 1368 (S.D. Fla. 2016). The School Board re-raises the same single argument it raised in its motion to dismiss: that the Plaintiffs' speech in furtherance of the Neva King conversion attempt was employee speech. The Eleventh Circuit recently weighed in on this question:

> The Supreme Court in *Garcetti* [*v. Ceballos*, 547 U.S. 410 (2006),] explained that the line between speaking as a citizen or as a public employee turns on whether the speech "owes its existence to a public employee's professional responsibilities." [*Id.*] at 421-22. If the speech does, then "[r]estricting [it] . . . does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id.*; *see also Boyce v. Andrew*, 510 F.3d 1333, 1342-43 (11th Cir. 2007) (collecting cases "[f]ollowing *Garcetti*" in which we interpreted the phrase "owes its existence to"). In *Lane v. Franks*, 134 S. Ct. 2369 (2014), the Supreme Court clarified what it meant in *Garcetti* when it used the phrase "owes its existence to":
>
>> [T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties . . . .
>
> *Id.* at 2379. We subsequently explained that "[a]fter *Lane*," *Garcetti*'s phrase "owes its existence to . . . must be read narrowly to encompass speech that an employee made ***in accordance with or in furtherance of*** the ordinary responsibilities of her employment, not merely speech that ***concerns*** the ordinary responsibilities of her employment." *Alves*, 804 F.3d at 1162.

*Carollo v. Boria*, 833 F.3d 1322, 1329 (11th Cir. 2016) (emphases added) (footnote omitted). In *Garcetti*, the Supreme Court explained that a court must make a "practical" inquiry to determine whether speech "owes its existence to" an employee's professional duties. 547 U.S. at 424. Practical factors that may be relevant to, but not dispositive of, that inquiry include the employee's job description, whether the speech occurred at the workplace, and whether the speech concerned the subject matter of the employee's job. *Moss*, 782 F.3d at 618.

At the outset, it is undisputed that the majority of the speech took place at Neva King. Each of the Plaintiffs has admitted to using school time and resources to research the charter conversion,

6

and the charter conversion was discussed at the Neva King EESAC meeting and in a Neva King faculty meeting.

Turning to the Plaintiffs' job descriptions, the first duty listed on the job description for Exceptional Education Principal—the position Dr. Fernandez held at Neva King—is "[p]rovid[ing] educational leadership by developing and implementing plans that effectively utilize the personnel and material resources necessary to produce a quality instructional program that is responsive to the needs of the identified student population." Fernandez Aff. Ex. A. Similarly, the first duty listed on the job description for ESE Assistant Principal—the position Cristobol held—is "[a]ssist[ing] the principal in planning and administering the instructional program and in conducting other activities necessary to provide quality instruction." Cristobol Aff. Ex. A. Although formal job descriptions "often bear little resemblance to the duties an employee actually is expected to perform, *Garcetti*, 547 U.S. at 424-25, Dr. Fernandez and Cristobol have proffered no evidence to even suggest that the duties they were expected to perform as principal and assistant principal, respectively, varied in any way from these listed duties. And given that "[a]ctivities undertaken in the course of performing one's job are activities undertaken 'pursuant to employment responsibilities,'" *Alves*, 804 F.3d at 1164, the Court must find that Dr. Fernandez's and Cristobol's speech in furtherance of the charter school conversion was employee speech under *Garcetti*. It would make little sense to conclude that the charter school conversion attempt was anything but an example of Dr. Fernandez developing a plan to effectively utilize his resources to produce an instructional program responsive to the needs of Neva King students, or that Cristobol's participation in the conversion was anything but an example of providing assistance to the principal in conducting the activities necessary to provide quality instruction—precisely in line with their listed duties.

The Plaintiffs contend that they did not speak as employees because several School District

7

officials concluded in disciplinary memoranda that converting Neva King into a charter school was not part of the Plaintiffs' official duties. This contention is of no moment. The subjective beliefs of various individual officials do not transform the character of Dr. Fernandez's or Cristobol's speech into citizen speech. Simply because speech "regard[s] conduct that interferes with an employee's job responsibilities" does not necessarily mean that that speech "is not itself ordinarily within the scope of the employee's duties." *Id.* at 1165. The Court concludes that Dr. Fernandez and Cristobol's speech in furtherance of the Neva King charter conversion was employee speech, and is therefore outside the scope of the protections of the First Amendment.

As to Ramirez, the Court comes to the opposite conclusion. As a placement specialist, Ramirez's listed job duties included determining eligibility and placement for exceptional students, providing professional development in-service training to schools, monitoring one-to-one paraprofessionals, and participating in and preparing cases for due process hearings. *See* Ramirez Aff. Ex. A. Considering these duties and the other evidence submitted, the Court finds that Ramirez's speech vis-à-vis the charter conversion lies more in the second category outlined in *Alves*—speech that merely "concerns the ordinary responsibilities of her employment," rather than speech made "in accordance with or in furtherance of the ordinary responsibilities of her employment." 804 F.3d at 1162. As a placement specialist, Ramirez was involved in aspects of the education of the students at Neva King, and certainly, the Court presumes, wished for them to have the best education possible. But despite these presumed good intentions, her position as a placement specialist did not involve the broad administrative and curricular responsibilities that the positions of principal and assistant principal would involve. As a result, Ramirez's speech in furtherance of the charter school conversion was neither in accordance with nor in furtherance of her ordinary responsibilities. *Cf. D'Angelo v. Sch. Bd.*, 497 F.3d 1203, 1210 (11th Cir. 2007) (finding that principal's speech in furtherance of a charter school conversion was employee speech in part because there

8

was no evidence that he was a teacher).

The School Board argues that Ramirez's speech is employee speech because, had she not been a School District employee, "it would have been unlikely that Plaintiffs would have ever had any involvement in the conversion effort, nor engaged in any speech related thereto." Def.'s Mot. at 13-14. However, the Supreme Court in *Lane* made quite plain that "the mere fact that a citizen's speech concerns information acquired by virtue of [her] public employment does not transform that speech into employee—rather than citizen—speech." 134 S. Ct. at 2379. While it is true that Ramirez may have never become involved in the conversion effort had she not been employed at Neva King, this premise does not categorically lead to the conclusion that her speech in furtherance of the conversion effort was employee speech. The Court thus concludes that her speech is citizen speech. Given that the School Board advanced no other First Amendment argument, the First Amendment analysis need not proceed further.

B.   *Section 1983 Liability*

The School Board also contends—in an argument that now applies only to Ramirez—that even if any of the Plaintiffs could establish a First Amendment claim, they have failed to establish the School Board's liability for that claim under Section 1983. A school board's liability under Section 1983 may not be based on the doctrine of respondeat superior, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), but rather only "only for acts for which [the School Board] is actually responsible," *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc). Ramirez has two methods through which she can establish the School Board's potential liability under Section 1983: "identify either (1) an officially promulgated [School Board] policy or (2) an unofficial custom or practice of the [School Board] shown through the repeated acts of a final policy maker for the [School Board]." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003). Because a school board rarely will have an officially adopted policy of permitting a particu-

lar constitutional violation, most plaintiffs—Ramirez here included—must show that the School Board has a custom or practice of permitting the constitutional violation and that the School Board's custom or practice is "the moving force [behind] the constitutional violation." *Id.* at 1330 (citations and internal quotation marks omitted). "To prove Section 1983 liability based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)) (citation and internal quotation marks omitted).

"Even in the absence of an express policy or custom, a local government body can be held liable 'for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision.'" *Cuesta v. Sch. Bd.*, 285 F.3d 962, 968 (11th Cir. 2002) (quoting *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996)); *see also K.M. v. Sch. Bd.*, 150 F. App'x 953, 957 (11th Cir. 2005) (per curiam) ("Florida law identifies the School Board as the policymaker for the School District . . . ."). Under a ratification theory, the School Board, "by actively endorsing or approving the conduct of its employees or officials, may be held responsible for it." *Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1189 (11th Cir. 2004) (citation and internal quotation marks omitted). For Ramirez to maintain a claim against the School Board under this theory, she "must demonstrate that local government policymakers had an opportunity to review the subordinate [district official]'s decision and agreed with both the decision and the decision's basis." *Id.* (citation and internal quotation marks omitted).

The Plaintiffs proffer an affidavit by Tony Peterle, the father of a former Neva King student. After the Plaintiffs were removed from Neva King, Peterle appeared before the School Board at a meeting to describe the conversion attempt and the events leading up to the Plaintiffs' removal.

10

Peterle Aff. [ECF No. 59-4] ¶ 10. Following the meeting, he sent a letter to each member of the School Board, in which he outlined his "grave[] concern[s] about the actions of district administration" regarding the conversion attempt. Peterle Aff. Ex. D. He contended that the reassignment of the Plaintiffs, who "were all at the forefront of the charter conversion discussion," was "clearly related" to the alleged interference by School District officials. *Id.* He explained his view that Florida law ensures school administrators must support a valid charter request, so the Plaintiffs were "torn between promoting a discussion in the best interests of the profoundly disabled students in their care, and the orders (legal or not) of their superiors, under threat of losing their jobs and careers." *Id.* Further, he stated that the Plaintiffs' reassignment "sent a very clear message to the remaining staff at the school that discussion of conversion will result in punishment . . . . The statute also says that such reprisals are not permitted, but that doesn't seem to have stopped them from happening." *Id.* Following his appearance at the meeting and the sending of this letter, the School Board took no action. Peterle Aff. ¶ 12.

Peterle attests that he also attended a meeting with School Board member Dr. Marta Perez and School Board attorney Walter Harvey; he provided a contemporaneous email account of the events of that meeting, as well. *See* Peterle Aff. ¶ 13; *id.* Ex. E. At the meeting, Dr. Perez stated that the events at Neva King "looked like an example of the District's anti-charter bias," and expressed that "the actions of the District were clearly against the law." *Id.* ¶ 13. Again, though, no action was taken.

The Court is persuaded that Ramirez has, sufficiently to withstand summary judgment, established the School Board's liability under a ratification theory. In cases in which courts found that a plaintiff had failed to establish liability under this theory, the record contained a clear lack of evidence. *See, e.g.*, *K.M.*, 150 F. App'x at 958 ("no evidence of any action—or even knowledge—by the Board itself"); *Sherrod v. Palm Beach Cnty. Sch. Dist.*, 424 F. Supp. 2d 1341, 1346 (S.D.

Fla. 2006) ("no proof in the record that any member of the school board, much less a majority" agreed with the superintendent's allegedly impermissible retaliatory animus toward the plaintiff). That is not the case here. In the light most favorable to Ramirez, the record contains evidence which supports a finding of ratification: (1) Ramirez participated in the charter conversion effort; (2) School District officials removed her from Neva King; (3) Peterle appeared before the School Board and informed them of the underlying situation and Ramirez's unwarranted removal from Neva King; (4) Peterle sent letters to each School Board member further explaining the situation; and (5) the School Board did not act. Furthermore, Ramirez provides evidence that a School Board member, Dr. Perez, in the presence of the School Board's counsel, described the School District's actions against the Plaintiffs as clearly unlawful. The School Board seeks to rebut this last point by providing deposition testimony from Dr. Perez in which she claims she had no personal knowledge or recollection of Peterle's allegations. However, a dispute regarding Peterle's factual account of his conversations with Dr. Perez and the School Board's attorney must be resolved at trial, not on a motion for summary judgment.

**IV.   CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the School Board's Motion for Summary Judgment [ECF No. 54] is **GRANTED** as to Plaintiff Alberto T. Fernandez and Plaintiff Henny Cristobol and **DENIED** as to Plaintiff Patricia Ramirez.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 12th day of June, 2017.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE